UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| KYLE EDWARD WHATLEY, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. G-10-218 |
| | § | |
| RICK THALER, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

The petitioner, Kyle Edward Whatley (#1508249), seeks habeas corpus relief under 28 U.S.C. § 2254, challenging a 2007 state felony conviction of aggravated robbery. The respondent has filed a motion for summary judgment. (Doc. # 1). Whatley has not filed a response. Based on a careful consideration of the pleadings, the record and the applicable law, this court grants the respondent's motion and by separate order enters final judgment dismissing the case. The reasons for this ruling are set out below.

## I.   PROCEDURAL HISTORY

Whatley was convicted of aggravated robbery, enhanced to a habitual offender by two previous convictions for aggravated robbery, in the 405th District Court of Galveston County, Texas. Whatley pled not guilty but the jury found him guilty and, after Whatley pled true to both enhancements, the jury sentenced him to life imprisonment on April 3, 2007. He appealed his conviction to the First Court of Appeals of Texas and filed a petition for discretionary review, which was refused. On March 10, 2010, he filed a state application for writ of habeas corpus, which was denied without written order on May 26, 2010, based on the findings of the trial court.

Whatley now seeks a federal writ of habeas corpus to challenge his state court conviction under 28 U.S.C. § 2254.   In that petition, Whatley argues that he is entitled to relief for the following reasons:

1.    He was denied effective assistance of counsel when his trial attorney failed to (1) investigate the crime; (2) conduct proper voir dire; (3) effectively cross-examine key witnesses; (4) point out defects in the state's burden of proof on deadly weapon use; and (5) object to extraneous offense evidence in the guilt/innocence  phase of trial.

2.    The prosecutor erred by injecting injurious and prejudicial matters into his voir dire argument and by asking commitment questions during voir dire;

3.    The trial court abused its discretion by allowing the prosecutor to ask commitment questions during voir dire;

4.    The evidence was legally and factually insufficient to support the deadly weapon element of his conviction for aggravated robbery.

.

## II.    **FACTUAL BACKGROUND**

Below are the facts of Whatley's crime, as summarized by the appellate court:

Around 3 a.m. on July 27, 2006, appellant entered a Kroger grocery store and walked around for about 20 minutes.  Appellant hid an electric toothbrush under his shirt, walked toward the exit, and told the cashier, Christopher Green, to have a good night.  The sensor in the toothbrush triggered the store's alarm, and Green asked appellant to stop.  Appellant refused to stop, and Green followed him into the parking lot demanding that he stop.  Appellant began to run, and Green followed until appellant stopped, turned around, and pointed a pistol at Green. Appellant told Green to get on the ground, but Green ran into the store to tell his manager that he thought appellant was going to shoot and kill him.

Green told the police that appellant was wielding a black semi-automatic pistol. Appellant was found later that morning, and a search of his car revealed a .177 caliber Daisy $CO_2$ powered BB pistol under the driver's seat.  A box of .177 caliber pellets and a box of $CO_2$ cartridges, with one cartridge missing, were found in the trunk.

Detective Robles of the Texas City Police Department's Criminal Investigation Division testified that he took appellant's statement, and appellant admitted to the crime and to pointing the BB gun at Green.  He agreed that Green thought the gun

was real and was scared, and that he had intended to scare Green.  Appellant admitted that the BB gun looked real.

Officer Todd of the Texas City Police Department's Criminal Investigation Division performed multiple tests on the BB gun.  He determined that appellant's BB gun meets the definition of a deadly weapon set forth in the Texas Penal Code.  He explained that appellant's BB gun is $CO_2$ powered, is more than powerful enough to put out a person's eye, and he would not consider the gun a toy.  Officer Todd acknowledged that the gun was not functioning properly when he first got it because it did not load BBs from the magazine.  However, after loading the gun in an alternative way, he was able to test fire it and shoot.

Detective Flores, a peace officer for 19 years, Sergeant Spottedbear, a peace officer for 22 years and the tactical supervisor for Texas City Police Department's SWAT team, and Detective Robles, a peace officer for 10 years, all testified that they consider BB guns to be deadly weapons, and, if one was pointed at them, they would respond with deadly force.

After hearing the evidence, the jury found that appellant used or exhibited a deadly weapon in committing the robbery, and thus was guilty of aggravated robbery.  After his conviction and sentencing, appellant timely appealed.

## III.   STANDARD OF REVIEW

This court reviews Whatley's petition for writ of habeas corpus under the federal habeas statutes as amended by the Antiterrorism and Effective Death Penalty Act of 1996.  28 U.S.C. § 2254; *Woods v. Cockrell*, 307 F.3d 353, 356 (5th Cir. 2002); *Nobles v. Johnson,* 127 F.3d 409, 413 (5th Cir. 1997) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  Subsections 2254(d)(1) and (2) of the AEDPA set out the standards of review for questions of fact, questions of law, and mixed questions of fact and law that result in an "adjudication on the merits."  An adjudication on the merits "is a term of art that refers to whether a court's disposition of the case is substantive, as opposed to procedural."  *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000).

In ruling on a motion for summary judgment, this court views the evidence through "the prism of the substantive evidentiary burden."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

254 (1986).  The court must look "through the prism of AEDPA deference."  *Ward v. Dretke*,

420 F.3d 479, 499 (5th Cir. 2005).

The AEDPA provides as follows, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)    (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

A state-court determination of questions of law and mixed questions of law and fact is

reviewed under 28 U.S.C. § 2254(d)(1) and receives deference unless it "was contrary to, or

involved an unreasonable application of clearly established Federal law, as determined by the

Supreme Court of the United States."  *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  A

state-court decision is "contrary to" Supreme Court precedent if (1) the state court's conclusion

is "opposite to that reached by the [the Supreme Court] on a question of law" or (2) "the state

court confronts facts that are materially indistinguishable from a relevant Supreme Court

precedent" and arrives at an opposite result.  *Williams v. Taylor*, 529 U.S. 362 (2000).  A state

court unreasonably applies Supreme Court precedent if: (1) it unreasonably applies the correct

legal rule to the facts of a particular case; or (2) it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id*. at 390-91.   In deciding whether a state court's application was unreasonable, this court considers whether the application was "objectively unreasonable." *Id*.; *Penry v. Johnson*, 215 F.3d 504, 509 (5th Cir. 2000).   Fact findings by the state court are "presumed to be correct . . . and [receive] deference . . . unless . . . based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Hill*, 210 F.3d at 485 (quoting U.S.C.§2254(d)(2)).

Pure questions of fact are governed by §2254(d)(2).   *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).   In addition, a state court's factual findings are entitled to deference on federal habeas corpus review and are presumed correct under 28 U.S.C.§2254(e)(1) unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)).   This deference extends not only to express findings of fact, but to the implicit findings of the state court as well. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005).

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir.), *cert. denied*, 531 U.S. 831 (2000), the rule applies only to the extent that it does not conflict with the habeas rules.   Section 2254(e)(1) - which mandates that findings of fact made by a state court are "presumed to be correct" - overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party.   Unless the petitioner can "rebut [ ] the presumption of

correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002). Moreover, once a party has been given a reasonable time to respond to an opposing party's motion for summary judgment but fails to make any attempt to do so, the Court may rule upon the evidence before it and may treat that evidence as undisputed. *Eversley v. MBank Dallas*, 843 F.2d 172, 173-74 (5th Cir. 1988).

Whatley is a *pro se* petitioner.  In this circuit, *pro se* habeas petitions are construed liberally and are not held to the same stringent and rigorous standards as are pleadings filed by lawyers.  *See Martin v. Maxey*, 98 F.3d 844, 847 n. 4 (5th Cir. 1996); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988).  This court accords Whatley's state and federal habeas petitions a broad interpretation.  *Bledsoe v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999).

## III.   DISCUSSION

### A.   The Claim of Ineffective Assistance of Trial Counsel

Whatley complains that he was denied effective assistance of counsel at trial because his trial counsel did not visit the crime scene; did not request independent testing of the evidence; was hesitant at voir dire; ineffectively cross-examined key witnesses; failed to point out defects in the State's burden of proof on the issue of deadly weapon; and, did not object to the admission of extraneous offense evidence in the guilt/innocence phase.

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Under *Strickland*, the defendant must show that (1) counsel's representation was deficient (i.e. that it fell below an objective standard of reasonableness) and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different.  *Strickland*, 466 U.S. at

687-91 & 694. In other words, defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. *Id.*

"It is well settled that effective assistance is not equivalent to errorless counsel or counsel judged ineffective by hindsight. [citations omitted]. Rather, inquiry must be made into the "totality of the circumstances surrounding counsel's performance to determine whether reasonably effective representation was provided." *Tijerina v. Estelle*, 692 F.2d 3, 7 (5th Cir. 1982). A court reviewing an ineffectiveness claim must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence or that, under the circumstances, the challenged action might be considered sound trial strategy. *Gray v. Lynn*, 6 F.3d 265, 268 (5th Cir. 1993).

Under § 2254(d)(1), the Court must analyze whether the state court's ultimate decision that petitioner did not make the required *Strickland* showing was contrary to, or an unreasonable application of the *Strickland* standard. *See Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2004) (the test is not whether petitioner makes the *Strickland* showing). However, "a federal habeas court is authorized by § 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). A federal habeas court should assume the state court applied the correct "clearly established Federal law" in making its decision. *Schaetzle*, 343 F.3d at 443.

Whatley alleges that his trial counsel rendered ineffective assistance of counsel for the reasons stated above. To establish "deficient performance," Whatley must show his attorney's

errors were "so serious that his counsel was not functioning as the 'counsel' that the Sixth Amendment guarantees." *Strickland*, 466 U.S. 668, 687.  An attorney is not required to make futile objections, nor to overcome the presumption that the challenged action would be considered sound trial strategy.  *Id.* at 691.  Trial counsel will not be deemed ineffective for failing to advance a defensive theory when his decision was a reasonable strategic choice based upon a "professional assessment of the plausibility of the defense and its likelihood of success at trial." *Moreno v. Estelle*, 717 F.2d 171, 177 (5th Cir. 1983).  Importantly, even when counsel's performance is deficient, a petitioner will not prevail on a claim of ineffective assistance of counsel unless he can satisfy the second prong of the test, which requires a showing of prejudice.

1.    The Claim of Failure to Investigate or Request Independent Testing

Whatley complains that trial counsel (Maurice Najer) was deficient because he did not visit the scene of the crime or request independent testing of the BB gun used in the offense.  The state court denied relief on the ineffective assistance of counsel claims.  The issue for this Court is whether the state court's decision was contrary to, or the result of an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States.

Whatley does not contest the fact that he tried to steal an electric toothbrush from Krogers or that he pointed a BB gun at the store clerk as he was fleeing the scene. Doc. No. 2, p. 1).  In his federal petition, Whatley accuses trial counsel of failing to conduct an adequate investigation of the charge because counsel failed to physically view the parking area of the Krogers store where the event occurred. Whatley does not state how a visit to the scene of the crime would have aided the investigation or how it would have changed the outcome of the trial. In his state habeas corpus application, however, Whatley claims that his attorney should have

visited the crime scene to acquire knowledge of the parking lot and lighting in order to confront the state's evidence.

In response to Whatley's claims, defense counsel provided a detailed affidavit to the state habeas court. With respect to the instant issue, counsel stated:

> I agree that I did not visit the scene of the offense. The issue of visiting the scene was not relevant to defendant's defense. Defendant waived his constitutional rights and gave a statement that he was at the scene of the offense when it took place.

The record corroborates defense counsel's assertion. Whatley's statement confirming that he stole the electric toothbrush and pointed a BB pistol at the store clerk was admitted into evidence at trial.

Whatley also claims that defense counsel was ineffective because counsel failed to request independent testing of state's evidence. In his affidavit, defense counsel stated that he viewed and discussed the BB pistol used in the crime with the assistant attorney general and officer Rodney Todd, the police officer who inspected and had possession of the pistol. Whatley also cross-examined Todd at trial and delved into the findings made after extensive testing that was performed on the pistol. Defense counsel also cross-examined each of the state's police officer witnesses about the BB gun in an attempt to undermine the state's characterization of the gun as a deadly weapon. 3 RR 35-37; 2 RR 63-64; 4 RR 75-75, 77; 4 RR 25, 27; 4 RR 83-84.

An attorney for the defense has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigation unnecessary. *Strickland*, 466 U.S. at 961. To establish that an attorney was ineffective, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial. *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005). In this case, Whatley failed to show that his attorney did not investigate, nor did he show how further investigation would have changed the

outcome of the trial.  He also failed to specify what evidence he believes required further testing or why it needed to be tested.  Conclusory allegations of this sort are insufficient to demonstrate deficient performance or actual prejudice.  *See Day v. Quarterman*, 566 F.3d 527, 540-41 (5th Cir. 2009); *see also Lincecum v. Collins*, 958 F.2d 1271, 1279 (5th Cir. 1992)(denying habeas relief where petitioner "offered nothing more than the conclusory allegations in his pleadings" to support claim that counsel was ineffective for failing to investigate and present evidence).  The state habeas court specifically found Whatley's attorney's affidavit to be correct, and all issues raised in state court to be credible and supported by the record.

> The Trial Court further finds that the representations contained in the State's Answer and said affidavit are correct, that no controverted previously un-resolved facts or issues exist which would entitle Applicant to relief, and that Applicant's claim has no legal merit.

The state court's findings, which Whatley does not rebut with clear and convincing evidence, are entitled to a presumption of correctness.  28 U.S.C. § 2254(e)(1).  The state court's findings are supported by the record.  Whatley is not entitled to relief on these claims.

2.    The Claim of Ineffective Assistance of Counsel During Voir Dire

Whatley claims that defense counsel's voir dire of the jury panel was hesitant and confused and was "more sociable than the result of effective trial strategy."  He asserts that counsel failed to ask specific questions of prospective jurors who had already shown possible bias.  Whatley's defense counsel responded to this claim in his affidavit to the state habeas court:

> At voir dire, 9 people were challenged for cause.  I believe that I was able to challenge any prospective juror who may have shown bias towards the defendant. The 10 individuals stricken by me were made because I did not feel comfortable with their attitude toward the offense.  However, all of them stated that they could be fair in their verdict.

The state habeas judge, who also presided over the trial, entered findings of fact based upon counsel's affidavit, the record and the representations made in the State's answer.  Based

on these findings, and applying the *Strickland* standard, the court concluded that no previously unresolved facts or issues exist which would entitle Whatley to relief, and that Whatley's claims have no legal merit.  In turn, the Texas Court of Criminal Appeals denied the application without written order on the trial court's findings, which was an adjudication of the claims on the merits. Whatley has failed to show that defense counsel conducted an improper or ineffective voir dire or that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different.  This claim must be dismissed.

3.   The Claim of Ineffective Assistance of Counsel During Cross-Examination

Whatley claims that defense counsel's effective cross-examination of key witnesses was lacking.  Assuming, *arguendo*, that defense counsel's failure to effectively cross-examine key witnesses constituted deficient performance, the issue for the Court is whether the outcome of Whatley's trial would have been different had counsel conducted an effective cross-examination. Again, Whatley failed to state how his attorney's cross-examination of key witnesses was lacking or how his attorney's performance altered the outcome of the trial. There is absolutely no basis other than Whatley's conclusory assertion to support an argument that the outcome of the trial would have been different had counsel extended his cross-examination beyond the scope that he did.

Because Whatley cannot establish the prejudice element of the *Strickland* standard, the state court's denial of this ineffective assistance of counsel claim was neither contrary to, nor the result of an unreasonable application of clearly established federal law.  This claim is without merit.

4.      The Claim That Trial Counsel Failed to Point Out Defects in the State's
Burden of Proof on the Issue of the Deadly Weapon Finding

Whatley claims that counsel was ineffective in failing to point out "glaring deficiencies" in the state's burden of proof on deadly weapon use, specifically, that the BB gun was not a deadly weapon.  The record shows that defense counsel cross-examined every state witness on the issue of whether the BB pistol was a deadly weapon, and was even able to illicit an admission from Officer Todd that the BB pistol used in the crime was not working properly at the time of the trial.  In his argument that the BB pistol should not be considered a deadly weapon because it was not working properly at the time of the robbery, Whatley's defense attorney argued to the jury:

> Now, at this point . . . I don't think you even have to consider whether this BB pistol is a deadly weapon because through my cross-examination the officer testified that this particular BB pistol did not even function.  He had to do certain things to make it function . . .  I submit to you that this was not a deadly weapon because it did not function at the time [of the crime].

Again, Whatley has provided no evidence that defense counsel failed to point out defects in the state's argument on the issue of deadly weapon use.  Furthermore, the record does not support such a finding.  This claim is without merit.

5.      The Claim That Trial Counsel was Ineffective for Failing to Object to
Extraneous Offense Evidence

In his fifth ineffective assistance of counsel claim, Whatley alleges that trial counsel failed to object to the introduction of extraneous offense evidence at the guilt/innocence phase of trial.  In his federal petition, Whatley does not identify the extraneous offense to which defense counsel should have objected, or how objecting to it would have changed the outcome of the trial.  In his state writ, Whatley refers to the extraneous offense evidence as "photographs of drugs and drug paraphernalia in a motel room . . . "

The photographs were admitted (during Officer Todd's testimony) as evidence of what the officers found when they entered Whatley's motel room.   Whatley gave the officers permission to search his room.   Whatley does not specify which of the photographs were damaging or how they could have affected the outcome of his trial. Whatley admitted to, and the record is replete with, evidence that he committed robbery.   The record is also replete with evidence supporting the finding that the robbery was committed with a deadly weapon.   There is absolutely no evidence to show that defense counsel's decision to not object to the admission of extraneous evidence would have changed the result of the trial, especially considering that Whatley signed a statement confessing to the offense.   Whatley's conclusory allegations are insufficient to demonstrate deficient performance or actual prejudice.   *Day*, 566 F.3d 527, 540-41 (5th Cir. 2009).

> **B.**      **The Claim of Prosecutorial Misconduct During Voir Dire**

Whatley argues that the prosecutor erred by hypothetically qualifying the venire panel on the range of punishment, divulging that Whatley was a twice-convicted felon.   As correctly stated by the respondent, voir dire is conducted under the supervision of the trial court and a great deal must be left to its sound discretion.   *U.S. v. Flores*, 63 F.3d 1342, 1352 (5th Cir. 1995). Under Texas law, while it is improper during voir dire to ask venire members how they would respond to a particular set of circumstances, it is proper to pose hypothetical fact situations to explain the law.   *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998).

A proper venire question seeks to discover a potential juror's views on an issue particular to the case; an improper question attempts to commit the venire member to a resolution based upon facts peculiar to the trial.   *Green*, 160 F.3d at 1037 (citing *Rhoades v. Texas*, 934 S.W.2d

113, 122 (Tex.Crim.App. 1996).  Hypothetical questions to determine if prospective jurors could distinguish between deliberate and intentional acts is a proper area for voir dire examination.  *Id.*

Whatley's claim that the prosecutor presented an impermissible hypothetical to the venire panel concerning range of punishment is not supported by the record.  The record shows that during voir dire, the prosecutor emphasized several times (when posing a question regarding range of punishment) that he was not referring to Whatley.  The prosecutor instructed the prospective jurors about the punishment range for a first degree felony like aggravated robbery; that punishment is enhanced for individuals charged with a first degree felony who are already convicted felons, if the State has proven that beyond a reasonable doubt; and, that an enhancement of this sort can range from fifteen (15) years to 99 years or life imprisonment.  The prosecutor further instructed, after reiterating that the hypothetical was not referring to Whatley, that if an individual has been charged with a felony offense like aggravated robbery and has previously been to prison two separate and distinct times, the punishment range is enhanced further if the State provides proof beyond a reasonable doubt.  The prosecutor also stated that the punishment range under this scenario ranged from twenty-five (25) years to 99 years or life imprisonment.  The prosecutor then asked each venire member to answer three questions: 1) Can you consider the range of punishment from five (5) years to 99 years or life in prison? (2) Can you  consider the range of punishment with one enhancement, if  it's proven beyond a reasonable doubt, or fifteen (15) years to 99 years or life in prison?  (3) and, with two enhancements, if it's proven beyond a reasonable doubt, 25 years minimum to a maximum of 99 years or life in prison?  The record shows clearly that during voir dire, the prosecutor's questions were posed to instruct on the law and determine if the panel could follow the law.  There is no evidence to

support Whatley's claim that the prosecutor attempted to find out more than a potential juror's views on the law and, at the same time, explain the law.

Next, Whatley asserts that the prosecutor asked impermissible commitment questions regarding the BB pistol, "committing the jury pool to deciding the central element of the charged offense, pretrial, before any evidence was heard, was prejudicial to applicant's case." (Doc. No. 2, p. 13). Whatley is referring to a question the prosecutor posed to each member of the jury panel after instructing them about the State's burden of proof in Texas for aggravated robbery, explaining the legal definition of "deadly weapon," and after citing hypothetical examples of deadly weapons.

> Mr. Reed:     And what I would like to do now is ask everybody bearing the
> legal definition in mind what their opinion is as far as whether
> or not they believe their opinion of whether or not a BB gun can
> be a deadly weapon. 2 RR 59.

The prosecutor's hypothetical in this case did not attempt to commit the prospective jurors to a specific set of facts. Rather, it appears that the prosecutor was only attempting to inquire about whether a prospective juror could abide by the standard of proof. Even if the inquiry could be construed as a commitment question, the prosecutor's hypothetical scenario appears reasonably calculated to lead to a proper challenge for cause. Moreover, trial counsel objected to the form and, after a brief meeting at the bench, the prosecutor asked:

> Mr. Reed:     Let me start again. What is your opinion on whether or not a BB
> gun or a BB pistol can be a deadly weapon? 2 RR 60.

Claims of prosecutorial error are reviewed in habeas corpus to determine whether they "so infected the [trial] with unfairness as to make the resulting [conviction] a denial of due process." *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000). Whatley has failed to establish how this or the previous alleged hypothetical question violated due process, especially

given the fact that he admitted to committing the offense.  There is no evidence of improper

conduct by the prosecutor.  This claim is without merit.

## C.   The Claim That the Trial Court Abused its Discretion

Whatley claims that the trial court abused its discretion in allowing the state's attorney to

ask each member of the venire panel whether they thought a BB pistol was a deadly weapon.

On federal habeas review of state court convictions, a federal harmless error standard

applies.  *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).  Therefore, to be actionable,

the trial court error must have had "substantial and injurious effect or influence in determining

the jury's verdict."  *Brecht*, 507 U.S. at 637.  Under this standard, a petitioner is not entitled to

federal habeas relief based on trial error unless he can establish that the error resulted in actual

prejudice.  *See Brecht*, 507 U.S. at 637.

The trial court has broad discretion over the process of selecting a jury.  *Flores,* 63 F.3d

at 1352; *Allridge v. State*, 762 S.W.2d 146, 167 (Tex.Crim.App. 1988); *Ewing v. State*, 157

S.W.3d 863, 866 (Tex.App.-Fort Worth 2005).  The propriety of a particular voir dire question is

reviewed under an abuse-of-discretion standard.   *Barajas v. State*, 93 S.W.3d 36, 38

(Tex.Crim.App. 2002). It is within the sound discretion of the trial court to determine whether a

hypothetical commitment question is properly being used to explain the law or being used to

improperly commit potential jurors to the specific facts of the case.  *See Atkins v. State*, 951 S.W.

2d 787, 790 (Tex.Crim.App. 1997).

In this case, prior to voir dire, the trial court ruled on defense counsel's motion in limine

concerning improper commitment from the jury panel as to whether a BB pistol is a deadly

weapon.  2 RR 4.   The trial court ruled that the prosecutor could only question the jury panel as

to whether the BB gun should be considered a deadly weapon in accordance with the definition

of a deadly weapon.  During voir dire, the prosecutor stated the legal definition of deadly weapon then asked the question previously noted.  Under the circumstances presented in the record, this Court cannot conclude that the trial court abused its discretion in permitting the question posed by the prosecutor.

### D.    The Claim That Appellate Counsel was Ineffective

Whatley also contends that he is entitled to relief because he was denied ineffective assistance of counsel on appeal.  First, Whatley claims that appellate counsel was ineffective because counsel notified him of the result of his direct appeal in an erroneous manner and essentially abandoned him when the time came for Whatley to file a petition for discretionary review.  As stated by the assistant attorney general, Whatley's right to counsel ended when the appellate court rendered its decision, and the right to counsel does not extend to the filing of a petition for discretionary review.  *See Moore v. Cockrell*, 313 F.3d 880, 882 (5th Cir. 2002)("[t]he constitutionally secured right to counsel ends when the decision by the appellate court is entered.").  There is no legal basis for this claim.

Next, Whatley argues that his appellate counsel was ineffective for failing to raise cognizable, non-frivolous grounds on direct appeal.  (Doc. No. 2, p. 23).  A claim of ineffective assistance on appeal is also governed by the above-referenced *Strickland* test, which requires the defendant to establish both constitutionally deficient performance and actual prejudice.  *See Smith v. Murray*, 477 U.S. 527, 535-36 (1986)(applying *Strickland* to a claim of ineffective assistance of counsel on appeal).  To establish that appellate counsel's performance was deficient in the context of an appeal, the defendant must show that his attorney was objectively unreasonable in failing to find arguable issues to appeal — that is, that counsel unreasonably failed to discover non-frivolous issues and raise them.  *Smith v. Robbins*, 528 U.S. 259, 285

(2000).  If the defendant succeeds in such a showing, then he must establish actual prejudice by demonstrating a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on his appeal." *Id.*

In his federal petition, Whatley discusses the two points of error brought on direct appeal: (1) sufficiency of evidence: and (2) ineffective assistance of counsel.  Whatley believes that the sufficiency of evidence claim was proper.  He also articulates several instances of inadequate representation by trial counsel that he believes should have been raised, then states, contrarily, that "the challenge made under ineffective assistance of counsel at trial was frivolous and without merit."   Whatley fails to identify what, if any errors his appellate counsel could have raised but did not raise on appeal.  More importantly, he failed to prove deficient performance or prejudice by his allegations.

The right to counsel on appeal "does not include the right to bring a frivolous appeal and, concomitantly, does not include the right to counsel for bringing a frivolous appeal. *Robbins*, 528 U.S. at 278.  An appellate counsel's failure to raise an issue on appeal will not be considered deficient performance unless that decision "fall[s] below and objective standard of reasonableness." *Id.*  This standard requires counsel "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." *Id*.  Whatley has presented no argument or evidence in this federal habeas action that would lead the court to conclude that the state courts unreasonably applied the standards set forth in *Strickland* based on the evidence presented in state court.  28 U.S.C.§ 2254(d).

Whatley's claims are conclusory and wholly unsupported by any evidence.  He has failed to show that the state court adjudication was contrary to, or involved an unreasonable application of clearly established law, as determined by the Supreme Court of the United States, or that the

adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Accordingly, Whatley's claims for relief will be denied.

### E.   The Claim that the Evidence was Legally Insufficient

The respondent notes, at the outset, that Whatley's claim that the evidence was legally insufficient was not properly presented in state court.  The respondent argues, therefore, that Whatley did not exhaust his state court remedies with respect to this allegation and that federal habeas corpus review is barred by the doctrine of procedural default.  The record confirms that Whatley did not properly present this claim in compliance with state procedures and that these claims were not adjudicated on the merits, which constitutes a procedural default for reasons discussed briefly below.

The federal habeas corpus scheme of review requires petitioners to first present their claims in state court and to exhaust all state court remedies through proper adjudication on the merits.  *See* 28 U.S.C. § 2254(b).  "To satisfy the exhaustion requirement, the petitioner must fairly present the substance of his federal claim to the highest state court."  *Ries v. Quarterman*, 522 F.3d 517, 523 (5th Cir. 2008).  If a claim has not been adjudicated on the merits in state court, federal review is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on an independent and adequate state-law ground.  *Coleman v. Thompson,* 501 U.S. 722, 729 (1991); *Lee v. Kemna*, 534 U.S. 362, 375 (2002).  The doctrine of procedural default also prevents habeas review when a petitioner has failed to meet state procedural requirements for presenting his federal claims, thereby depriving the state courts of an opportunity to address those claims in the first instance.  *See Coleman*, 501 U.S. at 732 (noting that, "[w]hen a petitioner fails to properly raise his federal claims in state court, he

deprives the State of 'an opportunity to address those claims in the first instance' and frustrates the State's ability to honor his constitutional rights").

The record reflects that Whatley did not raise his claim regarding legal insufficiency in either his petition for discretionary review or state habeas application. Whatley's failure to do so deprived the state court of the opportunity to consider them or make appropriate findings. As a result, these claims were not exhausted or adjudicated on the merits in state court. *See Cone v. Bell*, — U.S. —, 129 S.Ct. 1769, 1780 (2009).

Whatley provides no explanation for his failure to raise the legal insufficiency claim. As the respondent correctly notes, Whatley's failure to exhaust his state court remedies results is a procedural bar. It is well established that "[i]f a petitioner fails to exhaust state remedies, but the court to which he would be required to return to meet the exhaustion requirement would now find the claim procedurally barred, then there has been a procedural default for purposes of federal habeas corpus relief." *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2000)(citing *Coleman*, 501 U.S. at 735 n.1, and *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995). Whatley's unexhausted claims could have been raised in his state habeas corpus application. Accordingly, a successive petition would be barred by the Texas abuse-of-the-writ statute. *See* TEX.CODE CRIM. PROC.ANN. art. 11.07, § 4(a). Because Texas would likely bar another habeas corpus application by the petitioner on this subject, this default represents an adequate state procedural ground which, in turn, bars federal review of his claims unless an exception applies. *Finley*, 243 F.3d at 220 (citing *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995)).

Where a petitioner has procedurally defaulted on a claim in state court, federal habeas corpus review is available only if he can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that "failure to consider the

claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The Supreme Court has explained that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753. Actual prejudice requires a showing that, based on the success of the underlying defaulted claim, the result of the proceeding would somehow have been different. *See Barrientes v. Johnson*, 221 F.3d 741, 769 (5th Cir. 2000).

Whatley does not attempt to show that the fundamental-miscarriage-of-justice exception applies in this case. Nor does he attempt to show cause for his default. Even if Whatley were to establish cause, he does not demonstrate the requisite prejudice in that he does not allege or show that his underlying defaulted claim would have been successful. *See Barrientes*, 221 F.3d at 769. Because Whatley fails to meet an exception to the doctrine of procedural default, these claims are barred from further review and must be dismissed.

## IV.   <u>CERTIFICATE OF APPEALABILITY</u>

Because the habeas corpus petition filed in this case is governed by the AEDPA, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals ... ' "*Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

Under the AEDPA, a petitioner must obtain a certificate of appealability before he can appeal the district court's decision. 28 U.S.C. § 2253(c)(1). This court will grant a COA only if

the petitioner makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).   In order to make a substantial showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  As the Supreme Court made clear in its decision in *Miller-El,* 537 U.S. at 336, a COA is "a jurisdictional prerequisite," and "until a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from the habeas petitioners."  When considering a request a COA, "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate."  *Id.* at 325.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  After considering all of the pleadings, the state court records, and the applicable law, the Court concludes that none of the issues presented in this case warrant a certificate of appealability under the applicable standard.  Therefore, a certificate of appealability will not issue.

## V.   CONCLUSION

Based on the foregoing, the Court **ORDERS** that the respondent's motion for summary judgment is **GRANTED,** the petition for writ of habeas corpus is **DENIED,** and a certificate of appealability is **DENIED.**   All pending motions are **DENIED.**

SIGNED at Houston, Texas this 19th day of January, 2012.

_____

Kenneth M. Hoyt
United States District Judge